ADRIENNE C. PUBLICOVER (SBN 161432)
CHARAN M. HIGBEE (SBN 148293)
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
650 California Street, 14th Floor
San Francisco, California 94108-2718
Telephone:  (415) 433-0990
Facsimile:  (415) 434-1370

Attorneys for Defendant
THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLEN LOBAN, | Case No.: C 04 3582 SBA |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. | Trial Date: Oct. 12, 2005 |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | Location: Courtroom 3, 3rd Floor |
| Defendant. | The Hon. Saundra Brown Armstrong |

Pursuant to the Court's ruling on October 12, 2005, defendant The Prudential Insurance Company of America ("Prudential") submits the following proposed Findings of Fact and Conclusions of Law:

**Findings of Fact**

1. Prudential issued a Group Contract, No. G-93180-OH, to Divine Tower International Corporation ("Divine Tower") with a contract date of September 1, 2000 (hereinafter "the Group Contract.")

1

**[*REVISED* PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

USDC NDCA Case No. C 04 3582 SBA
178806.1

1  2.    The Group Contract provided short term disability ("STD") and long term disability
2  ("LTD") benefits to the employees of Divine Tower pursuant to the provisions and terms of the Group
3  Contract.
4  3.    The Group Contract is governed by the terms of the Employee Retirement Income
5  Security Act of 1974, 29 U.S.C. Sections 1001 et seq. ("ERISA.")
6  4.    Plaintiff's occupation on February 14, 2002 was a Regional Director Market Deployment
7  for Divine Tower.
8  5.    Divine Tower was an Ohio Corporation.
9  6.    On or about March 6, 2002, Prudential received a disability claim relating to plaintiff.
10  7.    The Employer Statement stated that plaintiff had last worked on February 14, 2002.
11  8.    In the Employee's Statement, plaintiff listed severe back pain and arm and leg numbness
12  as the reason he stopped working.
13  9.    With the disability claim, Divine Tower provided Prudential with a job description for
14  Regional Director Market Deployment.
15  10.   A Regional Director Market Deployment is a sedentary occupation.
16  11.   According to the information provided by Divine Tower, plaintiff's occupation required
17  strong computer skills, and a proficiency with the internet and e-mail. Divine Tower reported, on March
18  13, 2002, that plaintiff "works out of his home and does lots of sitting, phone work and computer work."
19  12.   When plaintiff's disability began in February of 2002, he was working from home and
20  his travel requirements were limited.
21  13.   Based upon the administrative record, it was reasonable for Prudential to find that travel
22  was not a material and substantial duty of plaintiff's regular occupation.
23  14.   The attending physician's statement, executed by Dr. Kenneth Light, listed disc
24  degeneration and protrusion, spondylosis, and annular tears as the illness and symptoms which caused
25  plaintiff to stop working.

15.     The attending physician's statement noted that surgery "may" alleviate plaintiff's symptoms.

16.     At the time plaintiff submitted his disability claim to Prudential, Divine Tower was experiencing financial problems which required employee lay-offs.  Plaintiff was next in line for lay-off from Divine Tower.

17.     Pursuant to the terms of the Group Contract, LTD benefits begin the day after the Elimination Period is completed.  "Elimination Period" means a period of continuous disability which must be satisfied before you are eligible to receive benefits.

18.     With respect to plaintiff, the Elimination Period began on February 15, 2002 and ended on May 16, 2002.

19.     The monthly LTD benefit provided under the Group Contract is 60% of the employee's monthly earnings (not to exceed $6,000) minus any "deductible sources of income."

20.     The deductible sources of income are set forth in the Group Contract.

21.     Under the Group Contract, there is a "limited pay period" for disabilities due to a sickness or injury which is primarily based on self-reported symptoms or is due in whole or part to mental illness.  "The limited pay period for self-reported symptoms and mental illness combined is 24 months during your lifetime."

22.     The Group Contract defines disability, within the first 24 months of payments, as when Prudential determines that "you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury" and you have a 20% or more loss in your monthly earnings due to that sickness or injury.

23.     The Group Contract defines disability, after 24 months of payments, as "when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience."

24.     The Group Contract defines "regular occupation" to mean:

"the occupation you are routinely performing when your disability begins.  Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location."

25. In March of 2002, Prudential completed its review of plaintiff's claim for STD benefits and approved STD benefits through March 14, 2002.

26. Plaintiff's STD claim was approved for his initial period of disability, and authorized through May 12, 2002, because spinal surgery was expected for the first week of April of 2002.

27. In May of 2002, a vocational evaluation was performed regarding plaintiff's job.

28. Prudential obtained medical records from Dr. Light, plaintiff's treating orthopedic surgeon.

29. Plaintiff visited Dr. Light on October 18, 2001; December 6, 2001; and March 14, 2002. Dr. Light performed tests on plaintiff on February 25, 2002.

30. In his October 18, 2001 report, Dr. Light questions why plaintiff's pain was "so severe."

31. In his March 14, 2002 report, Dr. Light stated that thoracic surgery could be considered, which would be a fusion of the spine between T5 and T9.

32. Prudential contacted Dr. Light's office on May 16, 2002 for an update of plaintiff's surgery.  Prudential was advised that the surgery had not yet been scheduled.

33. On June 24, 2002, Prudential sent plaintiff a letter stating that the review of his claim for LTD benefits under the Group Contract had been completed.  This letter advised plaintiff that his claim for LTD benefits was denied and that his STD claim had been terminated effective May 13, 2002.

34. In 2002, plaintiff had a 20 year history of back pain.

35. On July 12, 2002, plaintiff was observed watering his lawn with the hose slung over his shoulders.

36. In October of 2002, Prudential requested an Independent File Review to be provided by Dr. George Becker, a physician specializing in orthopedic surgery and psychiatry.

37. Prior to conducting the independent file review, Prudential contacted plaintiff and confirmed that no additional medical information was available for review.

38. In January of 2003, Prudential arranged for an Independent Medical Exam ("IME") of plaintiff with Dr. Becker. The IME was completed on March 13, 2003 and Dr. Becker provided a written report to Prudential.

39. Dr. Becker concluded that there was a psychological cause for plaintiff's chronic back pain.

40. Dr. Becker had plaintiff complete an MMPI-2 test at the IME, and the results of this test were forwarded to Randall Smith, Ph.D. for interpretation.

41. Dr. Smith provided a written report to Dr. Becker, which Dr. Becker relied upon in his own report to Prudential.

42. On May 8, 2003, Prudential completed its final review of plaintiff's requests for reconsideration and upheld its decision to deny plaintiff LTD benefits under the Group Contract.

43. As of May 8, 2003, Prudential had received no information from plaintiff that he had undergone back surgery.

44. As of May 8, 2003, plaintiff had provided no medical records to Prudential other than one letter from Dr. Light.

45. The information contained within the administrative record does not establish that plaintiff was disabled from his regular occupation throughout the Elimination Period.

**Conclusions of Law**

1. The Group Contract does not unambiguously grant discretionary authority to Prudential to determine eligibility for benefits under the ERISA plan.

2. The Court must apply the *de novo* standard of review to Prudential's denial of plaintiff's claim for long term disability benefits under the Group Contract.

3. Plaintiff bears the burden of establishing an entitlement to long term disability benefits under the Group Contract.

4. The Court's review of Prudential's denial of plaintiff's claim for long term disability benefits under the Group Contract is not limited to a review of the administrative record maintained by Prudential.

5. The opinion of plaintiff's treating physician, Dr. Light, is not entitled to more weight than the opinions of other medical providers consulted by Prudential.

6. Prudential's denial of plaintiff's claim for long term disability benefits under the Group Contract was reasonable and supported by substantial evidence.

7. Plaintiff did not meet his burden of proving an entitlement to long term disability benefits under the Group Contract.

8. Plaintiff is not entitled to an award for disability benefits under the Group Contract, and Prudential is entitled to judgment in its favor.

9. Prudential is not entitled to an award of reasonable attorney fees.

Dated: 11/28/05

*Saundra B Armstrong*
Hon. Saundra Brown Armstrong, Judge
United States District Court